# BENJAMIN GROB AND OTHERS v. CONTINENTAL MACHINE SPECIALTIES, INC. AND OTHERS.[1]

February 10, 1939.

No. 31,912.

[1]Reported in 283 N. W. 774.

460

*Daniel F. Foley,* for appellants.

*Henderson & Flakne* and *Charles H. Halpern,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendants appeal from an order overruling their separate general demurrers to plaintiffs' amended complaint, the court certifying the questions raised to be important and doubtful.

We gather from the complaint the following facts: Plaintiffs are copartners; their business is that of manufacturing, marketing, and selling "continuous filing machines and band saws"; their

place of business, Grafton, Wisconsin. The corporate defendant is organized under the laws of this state and has its principal place of business in Minneapolis, where it is engaged in business similar to that of plaintiffs. Defendants Leighton A. and James W. Wilkie are its officers, Peterson its shop foreman, and all of them are "stockholders or otherwise financially interested in" the corporate defendant.

In September, 1933, plaintiffs made application to the United States Patent Office for a patent on improvements "described and designated as a continuous filing machine." In August, 1935, they made a further application for a patent on the same kind of machine "with additional improvements added thereto and thereon." They still are the owners and holders of whatever rights they may have under the applications mentioned. In March, 1931, a model was completed, tested, and found serviceable. Since then it has been manufactured and sold commercially to the public.

In 1932 or 1933 defendant Leighton Wilkie "for the first time learned of the subject matter involved in the inventions and applications for patents above referred to." He thereupon entered "into a combination and conspiracy with the other defendants" for the purpose of obtaining samples or models, information, and data concerning the subject matter of these inventions. This was done "for the purpose of deceiving, cheating and defrauding the plaintiffs and with the malicious intent" on his part and that of his coconspirators, "to acquire for himself  *  *  *  and for his use and benefit, and for the use and benefit of the other defendants  *  *  *  the use, rights, benefits, profits, patents and ownership of the subject matter conceived and invented by said plaintiffs." In October, 1933, the corporate defendant purchased from plaintiffs one of these machines containing "the latest improvements." Leighton Wilkie visited plaintiffs' plant in March or April, 1934, and "requested and obtained an agency for the sale and distribution" of plaintiffs' machines. He revisited their plant in June seeking "a better proposition in connection with his established agency." The improvements referred to in the second application were then disclosed to him and the machine demonstrated by one of plain-

tiffs' employes. In January, 1935, plaintiffs were informed of their employe's demonstration. At that time Mr. Wilkie "requested that he be given a license by plaintiffs to manufacture and sell" a similar machine then being manufactured by his company. That request was refused. Wilkie thereafter "maliciously, wilfully, wrongfully, knowingly and with intent to cheat and defraud the plaintiffs and to obstruct the said plaintiffs from obtaining patents pursuant to the applications hereinbefore referred to, did, on or about * * * May, 1935, file an application" in the United States Patent Office asserting and claiming that he was "the first, original and sole inventor of the subject matter" plaintiffs had theretofore sought to have patented. This was all done by him "in furtherance of the conspiracy of the defendants to cheat, defraud and steal from the plaintiffs the inventions and right to patents legally belonging to them as first, sole, original and exclusive inventors" thereof. What is commonly known as an "interference" was thereupon declared by the patent office; "testimony was taken in behalf of both parties by the Examiner of Interferences at which time there appeared as witnesses on behalf of the defendant, Leighton A. Wilkie, the defendants, James W. Wilkie and Emil E. Peterson; that the taking of this testimony and the declaration of the interference proceedings were made necessary by reason of the false oaths contained in the two statements made by the defendant Leighton A. Wilkie." All of the testimony offered by and in behalf of defendants at the hearings mentioned is claimed to have been "false and untrue, and that said testimony was given by said defendants acting as witnesses in said proceedings with the malicious intent then had and entertained" by them that the same be accepted and taken as true. No patent was issued to either party. The dispute is still pending. Plaintiffs as "the first, sole and original inventors" of the subject matter sought by their applications for patent, have been unnecessarily held up and delayed. As a consequence plaintiffs have incurred large items of expense in the way of attorneys' fees, traveling expenses, printing briefs, and other items in an amount claimed to exceed $8,000. They further assert that as the proximate result of defendants' fraudulent acts, the giving of false testimony by

them, all pursuant to the conspiracy mentioned, plaintiffs have sustained losses "to their business and a loss of profits from the non-issuance of the patents herein referred to" in the amount of $42,000. The relief sought is a money judgment for these items, $50,000.

Plaintiffs' complaint when boiled down to its essential elements upon which damages are based amounts to this: Defendants have conspired together to steal plaintiffs' "valuable property rights" in claimed inventions by them conceived and put to commercial use; that they have timely sought to have their inventions patented; that in furtherance of defendants' conspiracy and while plaintiffs' applications for patents were still pending, they, by means of fraud and perjury, brought into being an apparent fact issue, false in fact, thereby bringing about "a so-called interference" before that office; that the pretended issue of fact so raised is there pending and undetermined; "that regardless of whether or not a patent has issued," they "still have a right to maintain this action on the theory on which it was commenced, viz., that of conspiracy."

▉ Under U. S. Const. art. I, § 8, it is provided that:

"The Congress shall have power:   *   *   *

"To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries;   *   *   *

"To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof."

By 28 USCA, § 41(7), it is provided that the district courts of the United States shall have original jurisdiction, "of all suits at law or in equity arising under the patent, the copyright, and the trade-mark laws." Section 371, *Id.*, provides:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states:   *   *   *

"Fifth. Of all cases arising under the patent-right, or copyright laws of the United States."

"The present judicial code expressly makes the jurisdiction of the federal courts exclusive of that of state courts in certain enumerated classes of cases, and accordingly the state courts cannot exercise jurisdiction in actions arising under certain laws of the United States, such as the bankruptcy law, the patent laws, the copyright laws," etc. 15 C. J. pp. 1153-1154, [§ 633]; 25 C. J. p. 727, [§ 34].

Citation of further authorities is needless, as it must be obvious that the matter of deciding which of the conflicting claims here presented has priority and whether the claimed inventions are sufficiently meritorious to warrant issuance of letters patent lies wholly within federal jurisdiction.

■ As we have seen, the matter of granting patents lies wholly within federal jurisdiction; and "how the sovereign authority of a country shall speak depends upon the constitution and settled scheme of government in that country, as does also the nature and extent of the rights granted to the inventor." The right acquired by the patentee does not create in him "the right to make, use, and vend the thing patented; that right he possesses at common law without special authority from the government. The right granted is only a negative right of exclusion. A patentee is merely given for a limited time the right to exclude others having knowledge of the invention from making, using, or selling it." 48 C. J. p. 17, [§ 6] A. The sustaining cases are found in the notes.

■ Decision law has established that a patent really amounts to a contract between the inventor and his government. The patent when granted is evidence of such a contract. There is a consideration moving from the inventor to his government and to the public by the disclosure of his invention. The consideration moving from the government to the patentee "is the grant of the exclusive right to make, use, and vend the invention throughout the United States, and the territories thereof, for a definite period of time." *Id.* pp. 17-18, [§ 7] B, and cases cited under notes. The patentee's right is in the nature of "an intangible, incorporeal right, * * * a title which continues to exist until divested by a voluntary grant or

other legal means of divestment." As such this right is property and, "in so far as its incorporeal nature permits, is subject to the general laws relating to such property, * * *." The right is personal in the inventor, and its situs necessarily must be with the individual holding it. *Id.* p. 18, [§ 8] C.

■ The constitution having invested with the congress the power to grant patents, we find upon examination of the statutes that there are numerous such enactments. "And under these laws inventors have an . absolute right to have letters patent issued to them; the granting of their applications is not a matter of favor or grace." 20 R. C. L. p. 1111, § 3.

■ The patent office is one of the bureaus of the Interior Department of our government. There, when granted, patents become matters of public record. As the commissioner of patents is under the law the officer "empowered to decide upon the merits of the application [for patent], his decision in granting the patent is presumed to be correct." Appeal lies to the federal courts for appropriate review. *Id.* p. 1112, § 5.

■ Interference proceedings, such as appear in the instant case, are first determined by and before the commissioner of patents. With him, in the first instance, lies the duty and responsibility of determining patentability of that which is sought to be patented; likewise the priority of invention if there be dispute in that regard. And here too his decision is subject to the right of review by appropriate appeal. *Id.* p. 1114, § 7; 48 C. J. p. 163, [§ 228] (2). On the subject of appeals from decisions of the patent office, see 48 C. J. p. 161, [§ 224] 12; as to right of appeal, *Id.* p. 162, [§ 225]b.

Pursuant to authority granted, the congress "has provided that a patent may be obtained, under and subject to certain exceptions and conditions, by any person who has discovered or invented any new and useful art, machine, manufacture, composition of matter, or any new and useful improvement thereof, not known or used by others in this country before his invention or discovery thereof, and not patented or described in any printed publication in this or

any foreign country before his invention or discovery thereof." 48 C. J. p. 19, [§ 9] A.

From what has been said it would therefore seem clear that the substantial rights of the parties to this cause are now pending before the only authority where such matters appropriately may be determined. If we strike from the complaint all matters with respect to the conflicting rights of the parties as to fact issues now pending and undetermined before the patent office, what is left upon which to found liability against defendants? Let us suppose this case were to go on trial and that plaintiffs recover; suppose further that before that judgment becomes final one of defendants is found to be the patentee; and that fact is shown to the trial court by way of supplemental answer, what would be the result? Obviously, we think, plaintiffs' cause would fail.

Jurisdiction to determine the primary rights upon which plaintiffs must rely for recovery being properly and exclusively before another tribunal prevents our interference under well settled law.

We conclude that the complaint does not state a cause of action, and the order overruling defendants' demurrers should be reversed.

So ordered.

